# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STATE OF KANSAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 24-1057-DDC-ADM |

## DEFENDANTS' RESPONSE TO THE COURT'S SCHEDULING NOTICE AND PROPOSED INTERIM SCHEDULING ORDER

In response to the Court's Notice to All Counsel and Parties, ECF No. 8, counsel for all parties have conferred in good faith, over email and videoconference, in an effort to "agree on all aspects of an interim Scheduling Order." Notice at 1-2. Despite those efforts, the parties were unable to reach agreement on several issues. Defendants thus submit the following response to the Court's Notice and proposed interim scheduling order.

### Identity and Direct Contact Information for Lead Counsel for Defendants

STEPHEN M. PEZZI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

### The Parties' Proposed Scheduling Orders

Based on the meet-and-confer process and Plaintiffs' filings, Defendants understand Plaintiffs' scheduling proposal to be as follows:

- April 22: Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction due.
- April 29: Plaintiffs' Reply to Defendants' Response due.
- May 3: Defendants' sur-reply due (if any).

- Defendants' forthcoming motion to dismiss cannot be filed "in conjunction with the Preliminary Injunction." Pls.' Mot. for Scheduling Order, ECF No. 39, at 2.

- As for Article III standing on the basis of alleged injury to state instrumentalities, Plaintiffs "anticipate having proof of these facts at the time of any hearing scheduled on this motion." Pls.' Mem. in Support of Mot. for Prelim. Inj., ECF No. 24, at 10 n.9.

By contrast, for the reasons set forth below, Defendants propose that Plaintiffs withdraw their current motion for a preliminary injunction (or that the Court deny it without prejudice), and that Plaintiffs refile that motion once they have actually compiled the information that they intend to rely upon to carry their burden to show Article III standing.

In the alternative, if the Court sets a schedule on Plaintiffs' motion now, it should be a schedule that combines briefing on Plaintiffs' motion and Defendants' forthcoming motion to dismiss, rather than have briefing on those two motions proceed on separate tracks. And it should leave adequate time for the parties to brief the issues raised in Plaintiffs' filings. Defendants thus offer the following scheduling proposal, in the alternative:

- April 26: Defendants' Combined Motion to Dismiss and Opposition to Plaintiffs' Motion for a Preliminary Injunction

- May 10: Plaintiffs' Combined Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiffs' Motion for a Preliminary Injunction

- May 24: Defendants' Motion-to-Dismiss Reply

- Hearing: if necessary, at the Court's convenience

**Good Cause to Adopt Defendants' Proposed Scheduling Order**

Plaintiffs challenge an agency rule that was published in the Federal Register nine months ago, on July 10, 2023. *See* Dep't of Education, *Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43820 (July 10, 2023). The Rule was preceded by a Notice of Proposed Rulemaking, issued fifteen months ago, on January 11, 2023. *See* Dep't of Education, *Improving Income-Driven Repayment for the William D. Ford Federal Direct Loan Program*, 88 Fed. Reg. 1894 (Jan. 11, 2023). Despite that significant passage of time, Plaintiffs now seek the "extraordinary remedy" of a preliminary injunction, *Winter v. Nat. Res. Def.*

2

*Council, Inc.*, 555 U.S. 7, 24 (2008), and seek to brief important issues of nationwide significance at a needlessly breakneck pace—all while failing to adequately tee up critical issues of Article III standing that are likely to be central (perhaps even dispositive) to the litigation.  Because Plaintiffs' scheduling proposal largely asks Defendants and the Court to bear the cost of Plaintiffs' insufficient preparation over the past nine months, Defendants respectfully oppose it, for the reasons set forth below—which address three disagreements between the parties about an appropriate schedule in this case, and one area of agreement.

> 1. **Whether briefing should proceed now, even though Plaintiffs' motion for a preliminary injunction is apparently subject to changes that could be dispositive of the entire litigation.**

The parties' first (and most significant) disagreement is about whether briefing should proceed now, even though Plaintiffs have professed an intent to update the factual record on Article III standing in ways that could be dispositive of the entire litigation.

It is Plaintiffs' burden to show Article III standing, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013), so their motion identifies three standing theories: (1) lost tax revenue starting in 2026 due to the way that most (but not all) of the Plaintiff states define "income" under state tax law, Pls.' Br. at 7-9; (2) a theorized increase in the future difficulty in recruiting, hiring, or retaining State employees, *id.* at 9-10; and (3) "harm to their state instrumentalities or quasi-instrumentalities," *id.* at 10.  The first two theories are meritless as a matter of law, for reasons that Defendants will address in future briefing.  Plaintiffs' third standing theory, however—about financial injury to state-owned instrumentalities—appears to be an effort to advance the same standing theory that the Supreme Court accepted in another recent case about student-loan forgiveness.  *See Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) ("Because we conclude that the Secretary's plan harms [the Missouri Higher Education Loan Authority (MOHELA)] and thereby directly injures Missouri—conferring standing on that State—we need not consider the other theories of standing raised by the States.").

The problem however, is that in neither their complaint, nor their preliminary-injunction motion do Plaintiffs plausibly allege (let alone offer evidence to support) that any (let alone all) of the Plaintiff States even *have* any state-owned instrumentality that shares any of the relevant factual

characteristics of MOHELA, or will suffer any of the sorts of harms that the Supreme Court credited. *See id.* at 2365-68 (describing MOHELA at length). In fact, they do not even name any relevant state instrumentality. Instead, Plaintiffs state that they "anticipate having proof of these facts at the time of any hearing scheduled on this motion." Pls.' Mem. at 10 n.9.

But Plaintiffs' burden was to allege facts that show they have standing in their complaint, not at a hearing on their motion for a preliminary injunction. It would be prejudicial for Defendants to have to respond to any such facts on the fly at a hearing, or in a sur-reply, as Plaintiffs propose. To be clear, this is no small issue: if any of the Plaintiffs has a state-owned instrumentality that is similarly situated to MOHELA in all relevant respects, that State may very well have Article III standing under binding Supreme Court precedent. If not, then this entire lawsuit may need to be dismissed for lack of subject-matter jurisdiction. Leaving that issue open and unresolved, and briefing the case on a shifting playing field, is not a sensible way to proceed. And there is no reason that Plaintiffs could not have gotten their factual ducks in a row on this issue at some point in the preceding nine months.

For these reasons, Defendants' position is that Plaintiffs should withdraw their current motion for a preliminary injunction and refile it whenever they are actually ready to do so—in particular, once they have actually compiled the information that they intend to rely upon to carry their burden to show Article III standing on their state-instrumentality theory. Because Defendants understand that Plaintiffs are unwilling to do so, or to abandon reliance on that theory, the Court should deny Plaintiffs' motion without prejudice to refiling it once Plaintiffs are ready to proceed. An appropriate schedule can be set at that time.

**2. Whether the parties should combine briefing on Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss.**

In the alternative, if the Court sets a schedule on Plaintiffs' motion now, it should be a schedule that combines briefing on Plaintiffs' motion and Defendants' forthcoming motion to dismiss, rather than have briefing on those two motions proceed on separate tracks.

Defendants' proposal is far more efficient for the parties and the Court, in that it will result in a four-brief schedule, rather than a seven-brief schedule. It will also reduce unnecessarily repetitive

4

briefing—on Plaintiffs' proposal, for example, the parties will be briefing identical issues of Article III standing in two separate motions, resulting in repetitive arguments from each party. After all, "[r]eview of a preliminary injunction 'is not confined to the act of granting the injunction, but extends as well to determining whether there is any insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and, if so, to directing a final decree dismissing it.'" *Munaf v. Geren*, 553 U.S. 674, 691 (2008) (quoting *Denver v. New York Trust Co.*, 229 U.S. 123, 136 (1913)). Indeed, as noted above, Defendants would argue that the complaint fails to adequately plead Article III standing.

Although Defendants' answer or Rule 12 motion is not currently due until June 7, *see* Fed. R. Civ. P. 12(a)(2), Defendants are willing to expedite that motion to the date that they file their opposition to Plaintiffs' preliminary-injunction motion, for the sake of creating this efficiency benefit.

**3. How quickly the parties should brief these important issues of nationwide significance.**

Also in the alternative, the parties' third and final disagreement is about how quickly the parties should brief the important issues of nationwide significance raised by Plaintiffs' motion. Plaintiffs propose an extremely compressed briefing schedule for a case like this one, which would have all preliminary-injunction briefing completed by May 3, which is only three weeks away—though Plaintiffs' proposed schedule does not account for Defendant's forthcoming motion to dismiss, as discussed above.

As set forth above, Defendants propose what is also a very speedy briefing schedule (particularly for a case in which significant review and coordination will be required within the Executive Branch), which would have both preliminary-injunction *and* motion-to-dismiss briefing completed by May 24. Especially given Plaintiffs' decision to wait nine months before filing this lawsuit, no additional expedition is necessary or appropriate. After all, Defendants' response to the complaint is not due until June 7, and the Final Rule does not take effect until July 1. *See* 88 Fed. Reg. at 43820.[1]

---

[1] During the meet-and-confer process, Plaintiffs referred to the fact that the agency has already invoked its statutory "early implementation" authority, in limited respects, to implement some

briefing—on Plaintiffs' proposal, for example, the parties will be briefing identical issues of Article III standing in two separate motions, resulting in repetitive arguments from each party. After all, "[r]eview of a preliminary injunction 'is not confined to the act of granting the injunction, but extends as well to determining whether there is any insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and, if so, to directing a final decree dismissing it.'" *Munaf v. Geren*, 553 U.S. 674, 691 (2008) (quoting *Denver v. New York Trust Co.*, 229 U.S. 123, 136 (1913)). Indeed, as noted above, Defendants would argue that the complaint fails to adequately plead Article III standing.

Although Defendants' answer or Rule 12 motion is not currently due until June 7, *see* Fed. R. Civ. P. 12(a)(2), Defendants are willing to expedite that motion to the date that they file their opposition to Plaintiffs' preliminary-injunction motion, for the sake of creating this efficiency benefit.

**3. How quickly the parties should brief these important issues of nationwide significance.**

Also in the alternative, the parties' third and final disagreement is about how quickly the parties should brief the important issues of nationwide significance raised by Plaintiffs' motion. Plaintiffs propose an extremely compressed briefing schedule for a case like this one, which would have all preliminary-injunction briefing completed by May 3, which is only three weeks away—though Plaintiffs' proposed schedule does not account for Defendant's forthcoming motion to dismiss, as discussed above.

As set forth above, Defendants propose what is also a very speedy briefing schedule (particularly for a case in which significant review and coordination will be required within the Executive Branch), which would have both preliminary-injunction *and* motion-to-dismiss briefing completed by May 24. Especially given Plaintiffs' decision to wait nine months before filing this lawsuit, no additional expedition is necessary or appropriate. After all, Defendants' response to the complaint is not due until June 7, and the Final Rule does not take effect until July 1. *See* 88 Fed. Reg. at 43820.[1]

---

[1] During the meet-and-confer process, Plaintiffs referred to the fact that the agency has already invoked its statutory "early implementation" authority, in limited respects, to implement some

Plaintiffs note that the federal government agreed to an even more expedited schedule in the *Nebraska* litigation, but (among other material distinctions) that lawsuit was filed only *one* month after the relevant agency action was announced, just *days* before the plan was set to take effect, and those plaintiffs filed a motion for a temporary restraining order the same day they filed their complaint.[2] This case does not present—and Plaintiffs themselves have not demonstrated—any comparable urgency.

For these reasons, if the Court does wish to enter a schedule now, it should enter a schedule no faster than Defendants' proposal, set forth above.

**4.  Whether the Court should issue a decision by June 24.**

Plaintiffs request that the Court issue a decision in this matter no later than June 24, 2024. Although Defendants defer to the Court about the timing of a decision, Defendants have no objection to Plaintiffs' request for a decision no later than June 24, given that the Rule takes effect on July 1. Defendants note, however, that the extremely quick briefing schedule that Plaintiffs propose is not necessary to have these issues fully briefed and ripe for decision by June 24. Defendants' proposal (or even a more routine schedule) would also leave ample time.

---

portions of the Final Rule before July 1.  But that too should have been no surprise to Plaintiffs: that approach was explicitly contemplated by the Final Rule in July 2023, *see* 88 Fed. Reg. at 43820-21, and the specific actions at issue were also separately noticed in the Federal Register many months ago (in October 2023, 88 Fed. Reg. 72685, and January 2024, *see* 89 Fed. Reg. 2489).

[2] *See Nebraska v. Biden*, 4:22-cv-1040, Dkt. No. 1 (E.D. Mo. filed Sept. 29, 2022); *Press Release, White House, FACT SHEET: President Biden Announces Student Loan Relief for Borrowers Who Need It Most* (Aug. 24, 2022), https://perma.cc/R2ND-6RQJ.

Dated: April 12, 2024               Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
 Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Twelfth Floor
Washington, D.C. 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*