**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| STATE OF ALASKA, *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>MIGUEL A. CARDONA, in his official capacity as Secretary of Education, *et al.*,<br><br>     Defendants. | Case No. 24-1057-DDC-ADM |

**DEFENDANTS' OPPOSITION TO DISMISSED PLAINTIFFS' MOTION**
**FOR PARTIAL FINAL JUDGMENT UNDER FED. R. CIV. P. 54(b)**

Almost two months ago, the Court dismissed eight of the eleven Plaintiff States who brought this suit, holding that they had failed to adequately allege Article III standing. *See* Mem. & Order, ECF No. 68 (June 7, 2024). The eight dismissed Plaintiffs filed a notice of appeal on July 3, ECF No. 88, invoking 28 U.S.C. § 1291. But that statute effectively codifies the final-judgment rule, under which an immediate appeal may be taken only of "final decisions of the district courts," 28 U.S.C. § 1291—not, as here, of an interlocutory order dismissing the claims of some (but not all) Plaintiffs. *See, e.g.*, *Ombe v. New Mexico*, 755 F. App'x 754, 757 n.1 (10th Cir. 2018) (collecting cases); Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties."). The eight dismissed Plaintiffs now seek entry of a partial final judgment under Federal Rule of Civil Procedure 54(b), which would allow their (otherwise jurisdictionally defective) appeal to continue. But the dismissed Plaintiffs have not carried their burden to justify a departure from the "the historic federal policy against piecemeal appeals" that is "preserve[d]" by Rule 54(b). *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956). The Court should thus deny the motion and allow this litigation to proceed in the normal course.

**LEGAL STANDARD**

To grant relief under Rule 54(b), the Court must determine that two conditions are met. First, the order must be "final" with respect to the dismissed Plaintiffs, thus representing "an ultimate disposition of" the "individual claim" or claims at issue. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears*, 351 U.S. at 436); *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001). Defendants do not dispute that this requirement is satisfied with respect to the claims of the eight dismissed Plaintiffs. Second, the Court must also "expressly determine[] that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Supreme Court and Tenth Circuit precedent cabins the district court's discretion in adjudicating Rule 54(b) motions. Most importantly, "[a]pplication of the rule should preserve the 'historic federal policy against piecemeal appeals.'" *Jordan v. Pugh*, 425 F.3d 820, 829 (10th Cir. 2005) (quoting *Curtiss-Wright*, 446 U.S. at 8; *Sears*, 351 U.S. at 438). After all, the default rule—that is, the final-judgment rule—"promotes judicial efficiency, expedites the ultimate termination of an action and relieves appellate courts of the need to repeatedly familiarize themselves with the facts of a case." *Bruner*, 259 F.3d at 1241. Accordingly, "Rule 54(b) entries are not to be made routinely." *Id.* at 1242 (citation omitted). Instead, relief under Rule 54(b) should be entered only "reluctant[ly]," "when dismissal . . . will create undue hardships." *Id.* (quoting *Gas-A-Car, Inc. v. Am. Petrofina*, 484 F.2d 1102, 1105 (10th Cir. 1973)); *see also Curtiss-Wright*, 446 U.S. at 8 (directing the district court to consider the "equities involved"). In considering such a request, "the district court should act as a 'dispatcher' weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water Co., LLC v. Vaca Partners, LP*, 425 F.3d 1263, 1265 (10th Cir. 2005). Ultimately, "Rule 54(b) certifications are a disfavored remedy." *Fine v. Tumpkin*, No. 17-cv-2140, 2019 WL 330759, at *2 (D. Colo. Jan. 25, 2019).

**ARGUMENT**

The dismissed Plaintiffs' motion proceeds from the unstated premise that certification under Rule 54(b) is to be freely granted as a matter of course. It is not. And here, on this sparse record, there is no basis for the Court to "expressly determine[] that there is no just reason for delay," Fed.

2

R. Civ. P. 54(b), for at least two reasons: (1) the moving States' failure to demonstrate any "undue hardships" or "inequities" from ordinary application of the final-judgment rule; and (2) the risk of inefficiency created by the piecemeal appellate process that would result from allowing a premature appeal on the weak standing theories advanced by these eight States. Their motion should be denied.

**1.** The dismissed Plaintiffs make no effort to show that adherence to the final-judgment rule "will create undue hardships," *Bruner*, 259 F.3d at 1242—or even any hardship at all. That is reason enough to deny their motion. *See id.*

Nor could they have made that showing. As an initial matter, given the Court's (correct) conclusion that the eight dismissed States "simply have no skin in the game," Mem. & Order at 3, ECF No. 68, there are no judicially cognizable "inequities that could result from delaying an appeal" by the dismissed States. *Stockman's Water*, 425 F.3d at 1265. There is thus nothing to balance against "Rule 54(b)'s policy of preventing piecemeal appeals." *Id.*

In addition, this Court's preliminary-injunction order covers all fifty states—including the three Plaintiff States that established Article III standing, as well as the eight dismissed States that did not. *See* Mem. & Order at 37, ECF No. 76 ("The court concludes that it must issue a nationwide injunction. . . . Defendants have articulated no good reason why student debtors in 47 states should do better than those in the three plaintiff states with standing to sue."). So there is no reason to think that an immediate appeal by the dismissed States would be necessary to avoid any (as yet unidentified) prejudice to those States.[1] And the fact that all eleven States are represented by the same counsel, *see* ECF No. 69, strongly suggests that their interests are fully aligned, in any event.

---

[1] In this case, the Tenth Circuit granted the government's motion for a stay pending appeal. *See* ECF No. 87. Plaintiffs have filed an emergency application with the Supreme Court, seeking to vacate the Tenth Circuit's stay. *See Alaska v. Dep't of Educ.*, No. 24A11 (U.S. July 9, 2024). That application remains pending with the Supreme Court as of the date of this filing.

In parallel litigation filed in the Eastern District of Missouri, however, in which the district court had also issued a (partial) preliminary injunction that applies nationwide, the Eighth Circuit recently granted an "administrative stay prohibiting" the government "from implementing or acting pursuant to the Final Rule," in its entirety, "until [the Eighth Circuit] rules on the [*Missouri* Plaintiffs'] motion for an injunction pending appeal." Order, *Missouri v. Biden*, No. 24-2332 (8th Cir. July 18, 2024). So, as of the date of this filing, the Final Rule is not being implemented at all.

Finally, the dismissed States' standing theories—about alleged harms to their interests in recruiting student debtors to work for the States, as well as harms arising from routine application of their own state income-tax laws—are insubstantial. *See, e.g.*, Mem. & Order at 3, ECF No. 68 ("No court has ever bought into this theory, and this court declines to become the first."). So, regardless of whether these eight States appeal now or later, they are unlikely to obtain any relief. That practical reality further undermines the notion that routine application of the final-judgment rule "will create undue hardships" for the dismissed States. *Bruner*, 259 F.3d at 1242.

**2.** Another consideration under Rule 54(b) is ensuring "that no appellate court would have to decide the same issues more than once" in the event of "subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8; *accord Stockman's Water Co.*, 425 F.3d at 1265. But granting the motion would make that inefficient outcome more likely—not less.

In their only substantive argument, the dismissed States assert, imprecisely, that they "were dismissed for lack of standing" and that the pending preliminary-injunction appeal "will necessarily have to address standing." Pls.' Mot. for Judgment ¶ 5, ECF No. 99. In the view of the dismissed States, that means that, if their Rule 54(b) motion is denied and they "have to wait to appeal their standing separately from the current appeal, *that* would require the appellate court to decide the same issues more than once." *Id.* (emphasis added) (quotation omitted).

But the States' theory overlooks that different States have presented distinct theories of standing in this case. The three Plaintiff States who survived Defendants' motion to dismiss—Alaska, Texas, and South Carolina—did so by relying on their state instrumentalities to show standing. By contrast, the (currently hypothetical) Rule 54(b) appeal by the eight dismissed States would turn solely on Plaintiffs' *other* standing theories, because none of those eight States has any relevant state instrumentality. Thus, although both appeals are likely to address standing-related issues, and there may be some overlap,[2] the focus of each appeal is not likely to be on all "the same issues." Pls.' Mot. for Judgment ¶ 5.

---

[2] For example, South Carolina—but not Alaska or Texas—has also advanced the state income-tax-revenue theory of standing that this Court has already rejected.

4

In fact, Rule 54(b) certification may increase the risk that the Tenth Circuit "would have to decide the same issues more than once." *Curtiss-Wright*, 446 U.S. at 8. This Court dismissed the eight moving States at the pleadings stage, by partially granting Defendants' Rule 12(b)(1) motion. ECF No. 68. But even if that outcome were reversed on appeal, that would not prevent Defendants from taking discovery or introducing additional evidence about Article III standing, as the litigation proceeds. That is because the elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," which means that each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). So regardless of how the Tenth Circuit rules on Plaintiffs' (currently hypothetical) 54(b) appeal from the partial grant of Defendants' motion to dismiss, this Court—and then the Tenth Circuit—may later have to reconsider similar questions of Article III standing, a second time, on a more robust factual record, at summary judgment. The risk of that sort of wasteful outcome is hard to square with the Tenth Circuit's admonition that "[a]pplication of [Rule 54(b)] should preserve the 'historic federal policy against piecemeal appeals.'" *Jordan*, 425 F.3d at 829 (quoting *Curtiss-Wright*, 446 U.S. at 8).

## CONCLUSION

The motion for entry of partial final judgment under Rule 54(b) should be denied.

Dated: July 24, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
 Senior Trial Counsel
SIMON G. JEROME (D.C. Bar No. 1779245)
 Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*