IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **STATE OF ALASKA, et al.,**  Plaintiffs, v. **UNITED STATES DEPARTMENT OF EDUCATION, et al.,**  Defendants. | Case No. 24-1057-DDC-ADM |

## MEMORANDUM AND ORDER

Eight dismissed plaintiffs want the Tenth Circuit to grade this court's papers immediately. The court dismissed all eight for lack of standing. Doc. 68 at 46. And they think the court got it wrong. But there's one problem. The court held that three other plaintiffs did have standing to proceed. So, dismissing the eight didn't end the case and didn't produce a final judgment appealable as a matter of right. Now, they ask the court to certify its dismissal Order (Doc. 68) as final under Rule 54(b), which would allow them to appeal now instead of waiting for the entire case to conclude. Appealing right away matters, dismissed plaintiffs contend, because two related appeals already have placed the standing issue before the court of appeals. Specifically, defendants appealed the court's separate preliminary injunction ruling, and the three surviving plaintiffs cross-appealed. And the standing question surfaces in the pending appeals' briefing. So, dismissed plaintiffs propose, let's review all the standing questions at once.

Defendants oppose. They argue that the pending appeals' review of standing will address only the surviving plaintiffs' distinct theory of standing—not the two standing theories relied on

by dismissed plaintiffs. And so, defendants assert, there's no reason to deviate from following the final judgment rule.

The court concludes that dismissed plaintiffs have the better argument. Directing entry of final judgment under Rule 54(b)—as dismissed plaintiffs request—promotes judicial efficiency and avoids piecemeal appeals. The court thus grants dismissed plaintiffs' Motion for Judgment under FRCP 54(b) (Doc. 99). It explains this ruling, below. But first, the court briefly recites the relevant background facts and procedural history.

I.     **Background**

### *The Underlying Case*[1]

Eleven states challenged new Department of Education student loan regulations, called the SAVE Plan. Doc. 57 at 2 (1st Am. Compl.). Plaintiffs brought four claims, asserting that the new regulations violated the Constitution's separation of powers and various provisions of the Administrative Procedures Act. *Id.* at 25–38 (1st Am. Compl. ¶¶ 133–227). Plaintiffs also moved for a preliminary injunction that would prevent defendants from implementing the SAVE Plan. Doc. 23. The eleven plaintiff states are: Alabama, Alaska, Idaho, Iowa, Kansas, Louisiana, Montana, Nebraska, South Carolina, Texas, and Utah. Defendants filed a Motion to Dismiss (Doc. 45).

### *The Court's Standing and Preliminary Injunction Orders*

Before ruling plaintiffs' preliminary injunction motion, the court ruled defendants' Motion to Dismiss (Doc. 45). Defendants' motion argued that plaintiffs lacked standing because the SAVE Plan doesn't cause them any direct harm. Doc. 46 at 14. Plaintiffs responded, identifying three theories of harm to support standing: (1) reduced revenue for the states' public

---

[1]     The court assumes some familiarity with the underlying case and refers more enthusiastic readers to its prior Orders (Doc. 68; Doc. 76) for a more fulsome treatment of the background facts.

instrumentalities that own student loans, (2) reduced tax revenue, and (3) a competitive harm to their ability to recruit (and retain) employees to state public service employment. Doc. 53 at 8–18. The court concluded that the first theory works under the recent Supreme Court ruling in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023). Doc. 68 at 2. Three plaintiff states relied on that first public instrumentalities theory: Alaska, Texas, and South Carolina. So those plaintiff states survived the standing challenge. *Id.* at 45–46. The other two standing theories, though, didn't make the cut. *Id.* at 2. The court thus held that the eight states who relied on the latter two theories of standing hadn't shouldered their standing burden. *Id.* at 45–46. So, the court dismissed Alabama, Idaho, Iowa, Kansas, Louisiana, Montana, Nebraska, and Utah for lack of standing. *Id.* The court refers to those eight states as the "dismissed plaintiffs" in this Order.

A few weeks later, the court entered another Order (Doc. 76) granting in part and denying in part the remaining plaintiffs' Motion for Preliminary Injunction (Doc. 23). The court enjoined defendants from implementing or acting under any parts of the SAVE Plan set to become effective on July 1, 2024. Doc. 77.

### *The Appeals*

Defendants appealed the court's preliminary injunction ruling to the Tenth Circuit. The Circuit docketed the appeal on June 27, 2024, styling it *State of Alaska v. EDUC*, Appellate Case No. 24-3089. Doc. 78 (Notice of Interlocutory Appeal). In that appellate case, defendants filed an Emergency Motion for an Immediate Administrative Stay and a Stay Pending Appeal to stay the district court's preliminary injunction. Appellate Case No. 24-3089, Doc. 6.[2] The

---

[2] There's a small litter of cases (and associated case and docket numbers) at play in this Order. The court explains briefly its method for keeping them all straight. If a cite consists of solely "Doc." and a number, *e.g.*, Doc. 99—without any preceding case number—the reference indicates a filing in this district court case. References to filings in the various appellate court cases always begin with "Appellate Case" and the relevant case number followed by the appellate docket citation, like this: Appellate Case No. 24-3089, Doc. 17 at 1.

Emergency Motion argued that surviving plaintiffs don't have Article III standing. *Id.* at 16–18. The Tenth Circuit granted the Emergency Motion and stayed the preliminary injunction pending the appeal. Appellate Case No. 24-3089, Doc. 17 at 1. On August 22, 2024, the Circuit issued an Order abating the appeal in light of the Eighth Circuit's injunction in a closely related appeal, discussed below. Doc. 107; Appellate Case No. 24-3089, Doc. 142.

Surviving plaintiffs cross-appealed on July 9, 2024. Doc. 95; Appellate Case No. 24-3094. Their cross-appeal briefs also address standing. *See, e.g.*, Appellate Case No. 24-3094, Doc. 40 at 25–37. The three surviving plaintiffs argue public-instrumentality-premised harms (which this court held sufficient to confer standing) and also harms "based on their separate income-tax and competitive injuries." *Id.* at 25. The Circuit abated this cross-appeal, as well, citing the Eighth Circuit injunction. Doc. 107; Appellate Case No. 24-3094, Doc. 85.

Finally, the eight dismissed plaintiffs appealed, as well. On July 9, 2024, they asked the Circuit to review their dismissal from the case. Doc. 94; Appellate Case No. 24-3093. They subsequently asked this court to enter a final judgment under Rule 54(b).[3] Doc. 99. The Circuit abated the dismissed plaintiffs' appeal on July 23, 2024—in the interest of judicial economy and efficiency—pending this court's Rule 54(b) Order. Doc. 103; Appellate Case No. 24-3093, Doc. 34.

---

[3] It is of no moment that dismissed plaintiffs first appealed and then moved for a Rule 54(b) judgment. When parties appeal without first securing a judgment under Rule 54(b), our Circuit has adopted "the practice of notifying the parties of [its] observation of the apparent jurisdictional defect and giving them a date certain by which to secure Rule 54(b) certification or an order or judgment explicitly adjudicating all remaining claims." *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988); *see also O'Brien v. United States*, 56 F.4th 139, 145 (1st Cir. 2022) ("The plaintiff filed a notice of appeal, which was premature because the case was still pending against the . . . other defendants. We held the appeal in abeyance while the plaintiff sought and received a partial final judgment.").

In sum, there are three appeals pending before the Tenth Circuit Court of Appeals—one by defendants (Appellate Case No. 24-3089), one by the three surviving plaintiffs (Appellate Case No. 24-3094), and one by the eight dismissed plaintiffs (Appellate Case No. 24-3093). The Tenth Circuit has abated them all.

### *Eighth Circuit Injunction*

A similar challenge to the SAVE Plan simultaneously emerged in the Eighth Circuit. It emerged from an action filed by a separate group of states (Missouri, Arkansas, Florida, Georgia, North Dakota, Ohio, and Oklahoma). *See Missouri v. Biden*, 112 F.4th 531, 534 (8th Cir. 2024). Those states secured a nationwide emergency injunction pending appeal in the Eighth Circuit. *Id.* at 538. An appeal and a cross appeal remain pending before the Eighth Circuit. *See* Appellate Case No. 24-3089, Doc. 149 (identifying that the two appellate cases in *Missouri v. Biden* remain pending and the injunction pending appeal remains in effect). The court's independent review of the Eighth Circuit docket confirms that—as of the date of this Order, at least—no decision has issued in those appeals.

That's the state of play in the constellation of cases targeting the SAVE Plan. The court now turns to the business at hand—plaintiffs' motion for entry of final judgment.

**II.    Legal Standard**

Federal Rule of Civil Procedure 54(b) provides, in relevant part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

This Rule functions to make an immediate appeal available, thus avoiding "'the possible injustice of a delay in entering judgment . . . as to fewer than all of the parties until the final adjudication of the entire case[.]'" *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir.

2001) (quoting 10 Charles A Wright et al., Federal Practice and Procedure § 2654 (1982)).  But, "Rule 54(b) entries are not to be made routinely." *Id.* (quotation cleaned up).  A "court applying Rule 54(b) must consider the policy against piecemeal appeals, which is intended to promote efficiency at the appellate-court level." *Cont'l Materials Corp. v. Valco, Inc.*, 740 F. App'x 893, 899 (10th Cir. 2018) (citing *Jordan v. Pugh*, 425 F.3d 820, 829 (10th Cir. 2005)).  This policy "expedites the ultimate termination of an action and relieves appellate courts of the need to repeatedly familiarize themselves with the facts of a case." *Okla. Tpk. Auth.*, 259 F.3d at 1241. To that end, "[i]nterrelated claims should be litigated and appealed together." *Cont'l Materials Corp.*, 740 F. App'x at 899 (citing *Jordan*, 425 F.3d at 829).  In short, district courts should "weigh[] Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005) (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)).

A "certification under Rule 54(b) is only appropriate when a district court adheres strictly to the rule's requirement that a court make two express determinations.  First, the district court must determine that the order it is certifying is a final order." *Okla. Tpk. Auth.*, 259 F.3d at 1242. An order is final when "'it is an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8).  "Second, the district court must determine that there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by the parties to the case." *Id.*  The court addresses these two express determinations, in turn, below.

**III.     Analysis**

    **A.     Final Order Determination**

6

Here, the parties never dispute the first criterion. They agree that the Order (Doc. 68) dismissing plaintiffs for standing is final. Doc. 104 at 4 ("Defendants do not dispute that this [final order] requirement is satisfied with respect to the claims of the eight dismissed Plaintiffs."); Doc. 106 at 1 ("[D]ismissal for lack of standing is final as to the States of Kansas, Alabama, Idaho, Iowa, Louisiana, Montana, Nebraska, and Utah."). Nonetheless, the "district court must independently determine that the order it's certifying is final. The parties' consent to certification doesn't relieve the district court of that duty." *Cont'l Materials Corp.*, 740 F. App'x at 899.

Fortunately, this first determination is straightforward. The June 7, 2024, Memorandum and Order held that eight plaintiff states didn't have standing. *See* Doc. 68 at 45–46 ("[P]laintiffs Kansas, Alabama, Idaho, Iowa, Louisiana, Montana, Nebraska, and Utah haven't shouldered their burden to show that they have standing. The court thus doesn't have subject matter jurisdiction over claims these eight plaintiffs wish to assert. It dismisses them from this case."). And courts routinely find dismissal on standing grounds represents a final order for the purpose of a Rule 54(b) analysis. *See, e.g.*, *In re Twin Lakes Real Estate, LLC*, 391 B.R. 211, 2008 WL 1961014, at *1 (B.A.P. 10th Cir. 2008) (finding order "final for purposes of appeal" because it "terminated Appellants as parties" for "lack of subject matter jurisdiction and lack of standing"); *Kane County v. Kempthorne*, No. 5-CV-0941-BSJ, 2007 WL 3333268, at *2–*3 (D. Utah Nov. 8, 2007) (concluding that dismissing plaintiffs' claims for lack of standing and subject matter jurisdiction "represents a final judgment on those claims and as to those plaintiffs"); *Rural Water, Sewer & Solid Waste Mgmt. Dist. No. 1 v. City of Guthrie*, No. CIV-05-786-R, 2008 WL 490635, at *2 (W.D. Okla. Feb. 21, 2008) (concluding that dismissing defendants' third-party

complaint and counterclaim for jurisdictional issues—including prudential standing—constituted a final judgment for purposes of Rule 54(b)).

The court thus expressly finds that its June 7, 2024, Memorandum and Order (Doc. 68) dismissing eight plaintiff states on standing grounds constitutes a final judgment for those eight plaintiffs.

### B. No Just Reason to Delay Determination

The parties aren't so agreeable, however, when it comes to the second express determination—no just reason to delay. Their just-reason arguments are two-fold: *First*, the parties dispute whether certifying the dismissal Order under Rule 54(b) will promote the historic federal policy against piecemeal appeals. *Second*, the parties dispute whether dismissed plaintiffs must demonstrate undue hardship to succeed on a Rule 54(b) motion. The court addresses each argument, starting with the policy against piecemeal appeals.

#### 1. Piecemeal Appeals

Understanding the parties' piecemeal appeal arguments requires a brief overview of how Rule 54(b) typically interacts with a case. Most courts decide a Rule 54(b) motion while some claims remain pending before the district court. *See, e.g.*, *Kane Cnty.*, 2007 WL 3333268, at *1 (deciding Rule 54(b) motion when one plaintiff's claim set for hearing before district court while other plaintiffs' claims dismissed); *Fine v. Tumpkin*, No. 17-cv-2140-WJM-MEH, 2019 WL 330759, at *1 (D. Colo. Jan. 25, 2019) (deciding Rule 54(b) motion when court had dismissed claims against one set of defendants and claims against other defendant remained stayed in district court pending resolution of state court criminal proceeding); *Rural Water*, 2008 WL 490635, at *3 (deciding Rule 54(b) motion when jurisdictional issues led to dismissal of third-party complaint and counterclaim but factually intense issues remained pending in district court).

That is, a successful Rule 54(b) motion often leaves one set of parties or claims at the district court level while the other set moves on to the appellate level.

In such cases, the party seeking 54(b) certification often argues that its claims are "distinct and separate" from those still pending before the district court. *Kane Cnty*, 2007 WL 3333268, at *2. That "distinct and separate" showing ensures that "no appellate court would have to decide the same issues more than once[.]" *Id.* The factors the district court should consider on a Rule 54(b) motion likewise highlight a case's typical posture, and how a distinct-and-separate analysis promotes appellate-court-level efficiency: "Factors the district court should consider are 'whether the claims under review are separable from the others *remaining to be adjudicated* and whether the nature of the claims already determined are such that *no appellate court would have to decide the same issues more than once* even if there were subsequent appeals." *Stockman's Water Co.*, 425 F.3d at 1265 (emphasis added & quotation cleaned up) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8). In other words, a Rule 54(b) analysis balances a party's desire for an immediate appeal with the efficiency of keeping a case all together. *See Cont'l Materials Corp.*, 740 F. App'x at 899 ("Interrelated claims should be litigated and appealed together." (citing *Jordan*, 425 F.3d at 829)).

The posture of this case is different. Here, defendants already have appealed the court's preliminary injunction ruling to the Tenth Circuit, and surviving plaintiffs have cross-appealed. So, ensuring that the appellate court doesn't have to decide the same issues more than once calls for a slightly different analysis here. The goal of judicial efficiency at the appellate-court level stays constant. But here—where the remaining parties and claims are on appeal before the Circuit already—the question becomes whether simultaneously evaluating the dismissed

9

plaintiffs' standing with that pending appeal promotes efficiency. The court concludes that it does so, as explained, next.

Each side argues that its approach will prevent disfavored piecemeal appeals, while the other side's approach will invite them. Defendants argue that the pending preliminary-injunction appeal—to the extent it reviews standing—will address only the distinct standing theory relied on by the three surviving plaintiffs: standing based on harms to public instrumentalities. Doc. 104 at 4. So, defendants contend, the standing theories relied on by the eight dismissed states—tax impact and employee competition harms—needn't arise in the surviving plaintiffs' appeal. Defendants thus conclude that, "although both appeals are likely to address standing-related issues, and there may be some overlap, the focus of each appeal is not likely to be on all 'the same issues.'" *Id.* (footnote omitted).[4]

To no one's surprise, the dismissed plaintiffs see it differently. They retort that it's defendants' approach—not their own—that invites piecemeal appeals. Doc. 106 at 3. Dismissed plaintiffs note the briefing in the pending appeals. *Id.* And they argue that this appellate briefing suggests the Tenth Circuit may reach all three standing theories on appeal, after all. *Id.* The dismissed plaintiffs have the better of this argument.

---

[4] Defendants also argue—because standing requires continued monitoring at successive stages of litigation—that similar standing questions may arise again at the summary judgment stage. Doc. 104 at 5. Their argument goes like this: If our Circuit reversed this court's standing dismissal on appeal, defendants could take additional discovery and introduce additional evidence about standing as the litigation proceeds, for example, at summary judgment. *Id.*

The court isn't convinced a three-steps-down-the-road hypothetical should weigh into its analysis here. The court thus declines to premise its Rule 54(b) analysis on what our Circuit later *may* decide on appeal, what defendants *may* acquire in discovery, and what arguments defendants *may* present at a hypothetical summary judgment stage. Looking at the litigation as it stands today, certifying under Rule 54(b) appears most likely to promote judicial efficiency at the appellate-court level. And that efficiency is one of the governing concerns of a 54(b) analysis. *See Cont'l Materials Corp.*, 740 F. App'x at 899 ("[A] court applying Rule 54(b) must consider the policy against piecemeal appeals, which is intended to promote efficiency at the appellate-court level.") (citation omitted).

The surviving plaintiffs' Response and Opening Cross-Appeal Brief identifies all three standing issues. Appellate Case No. 24-3094, Doc. 40 at 25 ("Moreover, if the Court were to reweigh the evidence on appeal, it must reweigh *all* the evidence, which demonstrates not only that the States have standing because of the harm to their entities, but also based on their separate income-tax and competitive injuries." (emphasis in original)). What's more, the Brief argues, "South Carolina also has standing because the SAVE Plan will cost it income-tax revenue." *Id.* at 34. Finally, the brief challenges the district court's holding that plaintiffs didn't have standing under their employee-competition theory. *Id.* at 64. Dismissed plaintiffs' rejected standing theories are thus, at least in some fashion, already before the Tenth Circuit.

Even if dismissed plaintiffs' precise standing theories weren't argued directly to the Circuit, judicial economy still would favor granting the Rule 54(b) motion here. To their credit, defendants concede that standing is an issue in the preliminary-injunction appeal—and it's an issue by their own hand. Doc. 104 at 4 (conceding that "both appeals are likely to address standing-related issues"); *see also* Appellate Case No. 24-3089, Doc. 6 at 16 (defendants arguing before our Circuit that plaintiffs don't have Article III standing). Even if the Circuit only addresses the public instrumentalities standing argument, as defendants suggest, it necessarily will consider the SAVE Plan's economic mechanisms and borrowers' anticipated responses to those mechanisms. Those same economic mechanisms and borrower responses also prove crucial to evaluating tax impact and competitive employment harms. That is, taking up dismissed plaintiffs' other two standing theories would require the Tenth Circuit to consider many of the same questions, on many of the same facts. Certainly, the standing theory that allowed Alaska, Texas, and South Carolina to proceed was distinct. But the analysis of any two of the standing theories here necessarily involves overlap, as defendants themselves concede.

11

*See* Doc. 104 at 4 (acknowledging that "there may be some overlap" because both appeals are likely to address standing). And that overlap independently suffices to recommend concurrent appeals.

### 2. Undue Hardships

Defendants try one final toss of the dice. They argue that the eight dismissed plaintiffs won't endure "undue hardships" if the court routinely applies the final-judgment rule, rather than certifying under Rule 54(b). Doc. 104 at 3–4. But undue hardship isn't part of Rule 54(b)'s rudiments. As dismissed plaintiffs point out, defendants appear to "invent a new, third condition" for a Rule 54(b) certification. Doc. 106 at 1 n.1. To be sure, defendants didn't pull an "undue hardships" analysis from thin air. Our Circuit explained in *Oklahoma Turnpike Authority* that one justification for a Rule 54(b) certification involves "'provid[ing] a recourse for litigants when dismissal of less than all their claims will create undue hardships.'" 259 F.3d at 1242 (quoting *Gas-A-Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973)). And the Circuit clarified that the undue hardship justification is limited, and thereby counsels a court to hesitate granting 54(b) certification. *Id.* But nowhere does our Circuit identify undue hardship as a requirement for a successful Rule 54(b) certification. Nor do defendants cite any other authority suggesting as much. *See generally* Doc. 104. Instead, any undue hardship analysis is best understood as part of the "inequities that could result from delaying an appeal" prong of the balancing test. *Stockman's Water Co.*, 425 F.3d at 1265 (citing *Curtiss-Wright Corp.*, 446 U.S. at 8).

Recall that Tenth Circuit precedent requires "weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Id.* (citing *Curtiss-Wright Corp.*, 446 U.S. at 8). This balancing test assumes the typical procedural posture of most 54(b) motions, where allowing an appeal under 54(b) certification leaves some of the

claims unadjudicated at the district court. In those cases, a district court can permit a potentially piecemeal approach when "the inequities that could result from delaying an appeal" outweigh those piecemeal concerns. *Id.* (citing *Curtiss-Wright Corp.*, 446 U.S. at 8). That's where any undue hardship analysis enters. *See, e.g.*, *Kane Cnty.*, 2007 WL 3333268, at *2 (explaining defendants' argument that there's no reason "any wait for the . . . claim to be resolved will cause [plaintiff] the hardship necessary to justify a piecemeal appeal"). So, an undue hardship may permit a court to *allow* a piecemeal appeal—the typical result of certifying under Rule 54(b). To put it differently, our Circuit's precedent aims to limit piecemeal appeals to those situations truly warranting it—those situations where "'dismissal of less than all [litigants'] claims will create undue hardships.'" *Okla. Tpk. Auth.*, 259 F.3d at 1242 (quoting *Gas-A-Car*, 484 F.2d at 1105). That's not this case.

The court already concluded here that allowing dismissed plaintiffs to appeal now actually *prevents* a piecemeal approach. So, the court needn't assess the undue hardships or inequities that could result from delaying an appeal—because it needn't balance them against disfavored piecemeal appeals. In other words, in this unusual case "the judicial administrative interests and the equities dovetail and militate in favor of granting judgment pursuant to Rule 54(b)." *Rural Water*, 2008 WL 490635, at *3. The court thus concludes there is no just reason to delay.

**IV.     Conclusion**

The court expressly determines that its June 7, 2024, Memorandum and Order (Doc. 68) dismissing eight states on standing grounds is final. The court also expressly determines that there is no just reason to delay entry of judgment. On the contrary, entering judgment now serves the aims of judicial efficiency at the appellate-court level by helping to prevent piecemeal appeals. Certifying Doc. 68 as final under Rule 54(b) thus is appropriate here.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs Alabama, Idaho, Iowa, Kansas, Louisiana, Montana, Nebraska, and Utah's "Motion for Judgment under FRCP 54(b)" (Doc. 99) is granted.

**IT IS FURTHER ORDERED THAT** the court directs the Clerk of the Court to enter judgment against plaintiffs Alabama, Idaho, Iowa, Kansas, Louisiana, Montana, Nebraska, and Utah.

**IT IS SO ORDERED.**

**Dated this 13th day of February, 2025, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**